# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN THE MATTER OF BERMOR, INC.     )     C.A. No. 8401-VCL

## MEMORANDUM OPINION

Date Submitted: January 6, 2015
Date Decided: February 9, 2015

Adam Hiller, Brian Arban, HILLER & ARBAN, LLC, Wilmington, Delaware; Ernest B. Murphy, MURPHY LAW OFFICES, Boston, Massachusetts; Philip F. Coppinger, LAW OFFICES OF PHILIP F. COPPINGER, Marlborough, Massachusetts; *Attorneys for Petitioner Louis J. Grossman.*

Peter B. Ladig, Brett M. McCartney, MORRIS JAMES LLP, Wilmington, Delaware; *Attorneys for Respondent Claire J. Cohen.*

**LASTER, Vice Chancellor.**

Two families own three real estate properties through two Massachusetts limited partnerships. The general partners of the limited partnerships are two Delaware corporations. The petitioner, Louis J. Grossman, owns 50% of the stock of each of the general partners. The respondent, Claire J. Cohen, owns the other 50%. Louis[1] has filed a petition to dissolve the general partners pursuant to Section 273 of the Delaware General Corporation Law, 8 *Del. C.* § 273. The petition is granted.

## I.     FACTUAL BACKGROUND

Trial took place on January 6, 2015. The following facts were proven by a preponderance of the evidence.

## A.     The Partnerships

The Grossmans and the Cohens have known each other for nearly half a century. The family patriarchs, Morton Grossman and Bernie Cohen, initially formed an entity called Main Street with two other partners. In 1978, Main Street acquired two commercial properties in Northampton, Massachusetts, and a third in Brookline, Massachusetts (the "Properties").

In 1992, Morton and Bernie formed two Massachusetts limited partnerships: the Bermor Limited Partnership and the Bermor Taunton Limited Partnership (the "Partnerships"). They coined the name "Bermor" as a portmanteau of the first three

---

[1] Multiple members of the Grossman and Cohen families appear in this decision. To avoid confusion, this opinion uses their first names.

1

letters of their first names: Bernie and Morton. The Partnerships are governed by virtually identical limited partnership agreements (the "LP Agreements").

The purpose of the Partnerships was and remains to own the Properties for the benefit of the members of their Grossman and Cohen families, who are limited partners in the Partnerships. The limited partners originally comprised two Grossman family members and two Cohen family members. Presently, there are twenty-five Grossman limited partners and six Cohen limited partners.

The general partners of the Partnerships are two Delaware corporations: Bermor Inc. and Bermor Taunton, Inc. (the "General Partners"). Each General Partner owns a 1% interest in its respective Partnership. The General Partners are governed by virtually identical certificates of incorporation and bylaws (the "By-Laws").

Each General Partner is a joint venture corporation with two 50% stockholders. The stockholders currently are Louis and Claire. Louis is Morton's son. He owns 100% of the Class A common stock of each General Partner. Claire is Bernie's widow. She owns 100% of the Class B common stock of each General Partner.

The board of directors of each General Partner consists of two Class A directors and two Class B directors. The Class A directors are elected by the holders of the Class A shares; the Class B directors are elected by the holders of the Class B shares.

Before the governance disputes leading to this proceeding, each board comprised the same four directors. The Class A directors were Louis and his sister Amy Sands. The Class B directors were Claire's sons, Gerald and Richard Cohen. Claire is not involved actively with the General Partners, the Partnerships, or the Properties.

2

In addition to his role as a director of the General Partners, Gerald owns other real estate companies. Since 1981, his company CGI Management has managed the Properties. The Partnerships pay CGI fees for its services.

## B.    Louis Makes Proposals.

In 2011, limited partners from the Grossman side informed Louis that they wanted the Partnerships to generate liquidity. Louis responded by proposing a refinancing to Gerald and Richard that would have generated $5 million for distribution to the limited partners. Gerald and Richard were not interested in the refinancing, which their accountants advised could have adverse tax implications. It also ran contrary to their philosophy of avoiding debt. Despite Gerald and Richard's opposition, Louis continued to push for liquidity.

In October 2012, Louis changed tack by proposing that either the Cohen family or the Grossman family buy out the other. The parties came close on terms but failed to reach agreement.

In February 2013, Louis, Gerald, and Richard met to discuss their disagreements about the direction of the Partnerships. Louis suggested the following options: (i) refinancing to generate liquidity; (ii) adding a buy-sell mechanism to the corporate documents for each General Partner; (iii) holding an internal auction among the partners, or (iv) selling the Properties on the open market. Gerald, and Richard demurred, then proposed to discuss the alternatives at the next board meeting.

## C.  Sands Resigns.

By February 20, 2013, both sides acknowledged the existence of an impasse over the future direction of the Partnerships. Unfortunately, the deteriorating business relationship was coloring the families' personal interactions and placing a strain on their longtime friendship. Amy Sands, who is Louis' sister, was best friends with Leslie Godorff, who is Gerald and Richard's sister. To protect that friendship, Louis suggested that Sands resign from her directorships. She did, and Louis replaced Sands with his son, David.

## D.  The Petition For Dissolution

On March 8, 2013, Louis filed two actions in this court seeking dissolution of the General Partners pursuant Section 273. The actions were consolidated and tried. During the pendency of the litigation, each side made further proposals to the other. None were accepted. The parties' failure to reach agreement reinforced the existence of an impasse.

## II.  LEGAL ANALYSIS

Section 273 establishes a mechanism for the dissolution of a joint venture corporation with two 50% stockholders:

> (a) If the stockholders of a corporation of this State, having only 2 stockholders each of which own 50% of the stock therein, shall be engaged in the prosecution of a joint venture and if such stockholders shall be unable to agree upon the desirability of discontinuing such joint venture and disposing of the assets used in such venture, either stockholder may, unless otherwise provided in the certificate of incorporation of the corporation or in a written agreement between the stockholders, file with the Court of Chancery a petition stating that it desires to discontinue such joint venture and to dispose of the assets used in such venture in accordance with a plan to be agreed upon by both stockholders or that, if no such plan shall be agreed upon by both stockholders, the corporation be dissolved.

4

Such petition shall have attached thereto a copy of the proposed plan of discontinuance and distribution and a certificate stating that copies of such petition and plan have been transmitted in writing to the other stockholder and to the directors and officers of such corporation. The petition and certificate shall be executed and acknowledged in accordance with § 103 of this title.

(b) Unless both stockholders file with the Court of Chancery:

(1) Within 3 months of the date of the filing of such petition, a certificate similarly executed and acknowledged stating that they have agreed on such plan, or a modification thereof, and

(2) Within 1 year from the date of the filing of such petition, a certificate similarly executed and acknowledged stating that the distribution provided by such plan had been completed,

the Court of Chancery may dissolve such corporation and may by appointment of 1 or more trustees or receivers with all the powers and title of a trustee or receiver appointed under § 279 of this title, administer and wind up its affairs . . . .

8 *Del. C.* § 273. Section 273 grants the court "the power to dissolve the corporation and appoint trustees or receivers to wind up its affairs, unless the two shareholders certify to the court that they have agreed on a plan of discontinuance and distribution within a statutorily-prescribed period and also certify within a statutory period that the distribution has been completed . . . ." *In re Data Processing Consultants, Ltd.*, 1987 WL 25360, at *1 (Del. Ch. Nov. 25, 1987) (Allen, C.). "The purpose of the statute is to afford relief where the corporation's two equal shareholders are deadlocked and cannot agree upon whether the joint venture should be continued and how the corporation's assets should be disposed of." *In re Coffee Assocs., Inc.*, 1993 WL 512505, at *3 (Del. Ch. Dec. 3, 1993); *accord Data Processing*, 1987 WL 25360, at *1. *See generally* Donald J. Wolfe, Jr. &

Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 8.11[a]2][i], at 8-240 (2013).

"[W]hile Section 273 recognizes a power in this court to deny a petition that satisfies its minimum standards, such power should be sparingly exercised." *Data Processing*, 1987 WL 25360, at *4. "Once the requirements of § 273 are met, the exercise of such discretion is limited to a determination of whether or not a bona fide inability to agree exists between the two shareholders." *In re Arthur Treacher's Fish & Chips*, 1980 WL 268070, at *4 (Del. Ch. July 1, 1980).

> Generally speaking, where a voluntary corporate dissolution is sought to be effected pursuant to the terms of a statute, it is not to be interfered with by the courts in the absence of illegality or actual fraud . . . . By the same token the dissolution [under Section 273] here sought should not be judicially interfered with *in the absence of a showing of bad faith or compensable injury to the other shareholder* . . . .

*Id.* at *3 (emphasis added). The showing of bad faith must "relate to bad faith in the seeking of a dissolution of the joint venture corporation and not to other claims or actions between those concerned." *Data Processing*, 1987 WL 25360, at *4; *accord In re Food Ingredients Int'l, Inc.*, 2010 WL 4812967, at *4 (Del. Ch. Nov. 18, 2010). Thus, the only basis upon which the court may refuse to dissolve the General Partners "is if 'the actual foundation for this action' is something other than 'a genuine inability to agree upon the desirability of discontinuing this joint venture.'" *In re McKinney-Ringham Corp.*, 1998 WL 118035, at *5 (Del. Ch. Feb. 27, 1998) (quoting *Arthur Treacher's*, 1980 WL 268070, at *3). Where, however, "the facts support a genuine dispute over the desirability of continuing the business enterprise as a joint venture, the inquiry ends." *Id.*

6

Each General Partner has two 50% stockholders engaged in a joint venture. The sole issue is whether the joint venturers are "unable to agree upon whether to discontinue the business or how to dispose of its assets." *Coffee Assocs.*, 1993 WL 512505, at *3. The evidence presented at trial established that the joint venturers are unable to agree about how to dispose of the assets of the business, including specific matters such as (i) using the assets of the business to generate liquidity through a refinancing and (ii) alternatives to a refinancing such as a buy-sell agreement, a private auction among the stockholders, or a sale of the Properties on the open market. In pre-litigation communications, both sides referred to their disagreement as a deadlock or impasse.

Claire has argued that the dispute has not lasted long enough to warrant dissolution. Although *McKinney-Ringham*, on which she relies, did involve a relationship that deteriorated over a prolonged period, Section 273 does not require extended suffering. *See In re Venture Advisers, Inc.*, 1988 WL 127096, at *1 (Del. Ch. Dec. 1, 1988) (finding that the deterioration of a business relationship between two 50% stockholders over the course of a year was sufficient to deny a motion to dismiss a petition for dissolution under Section 273). "Section 273 exits to enable deadlocked shareholders to bring closure to what has become an inefficient and unworkable relationship." *In re Magnolia Clinical Research, Inc.*, 2000 WL 128850, at *2 (Del. Ch. Jan. 3, 2000). It does not mandate that parties struggle until they have destroyed their relationship entirely and jeopardized their business.

Claire also has argued that any dispute exists at the limited partnership level and not the general partner level. The LP Agreements grant the General Partners the exclusive

7

ability to manage and control the Partnerships. Any management dispute necessarily occurs at the general partner level.

Claire's third argument is that dissolution would be improper because in an ideal world, Louis would prefer not to dissolve the Partnerships. That may be true, but it does not change the fact that an impasse exists at the general partner level. "Simply because [the general partner] may have interests in or responsibilities related to other non-Delaware entities of differing structures does not mean [the general partner] may not be a distinguishable, independent joint venture enterprise" for purposes of dissolution under Section 273. *McKinney-Ringham*, 1998 WL 118035, at *3. The General Partners are Delaware corporations that are separate and distinct from the Partnerships. To resolve the disagreement at the general partner level, Louis may seek to dissolve the General Partners under Section 273. He may do so even if he has misgivings and might prefer a different course.

Claire's fourth argument is that Louis acted in bad faith by seeking dissolution. As evidence of bad faith, Claire points to (i) Louis' suggestion that Sands resign and (ii) his failure to present his liquidity proposals during formal board meetings.

For purposes of the bad faith defense to a Section 273 petition, the question "is whether Petitioner filed this action knowing that there is no bona fide disagreement between the parties justifying a basis for disagreement over the dissolution of [the General Partners]." *McKinney-Ringham*, 1998 WL 118035, at *5. Neither of Claire's instances supports a finding of bad faith of this type.

8

Louis' suggestion that Sands resign was a matter of fraternal concern rather than bad faith. The evidence at trial established that Louis asked Sands to resign to protect her personal relationship with Godorff. That was commendable, not reprehensible.

Louis' failure to present his proposals at board meetings did not constitute bad faith either. The General Partners never held formal board meetings. The families conducted business informally. Louis presented his proposals in a manner consistent with historical practice.

Finally, Claire characterizes the petition as a means to "extort the Cohens into yielding to [Louis'] refinancing proposal and corporate amendments." Dkt 3 at 18.

> The fact one who seeks his statutory entitlement to dissolve the enterprise in order to extract his investment from it may incidentally benefit from dissolution cannot be a basis for the Court to deny an otherwise appropriate petition. It frankly seems unlikely one would ever petition for dissolution until one concluded the benefits derived from the continued association with the enterprise were outweighed by the disadvantages flowing from the continued operation.

*McKinney-Ringham*, 1998 WL 118035, at *5. Because there is nothing to suggest that "'the actual foundation for this action' is something other than 'a genuine inability to agree upon the desirability of discontinuing this joint venture,'" the petition is granted. *McKinney-Ringham*, 1998 WL 118035, at *5 (quoting *Arthur Treacher's*, 1980 WL 268070, at *3).

Section 273(b) states that "if the parties cannot agree to a plan of dissolution, the Court may appoint a trustee or receiver who will ensure an equitable division of the proceeds." *McKinney-Ringham*, 1998 WL 118035, at *6; *accord Data Processing*, 1987 WL 25360, at *1. Louis filed the petition and a plan of discontinuance on March 11,

9

2013. Dkt. 1 Ex. A. Claire objected to the plan. Because the parties have failed to agree on a plan within the three months permitted by Section 273, the court will appoint a trustee to dissolve the General Partners.

### III. CONCLUSION

The petition is granted. The court will appoint a trustee by separate order.